**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRYANT YOUNG,[1] | ) | |
| Plaintiff, | ) | Civil Action No. 1:24-00081 |
| v. | ) | District Judge Susan Paradise Baxter |
| DR. LAUREL HARRY, et al., | ) | Magistrate Judge Kezia O. L. Taylor |
| Defendants. | ) | ECF No. 90 |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss be granted in part and denied in part. Specifically, it is recommended that all claims asserted against Defendants in their official capacities be dismissed with prejudice as amendment would be futile.

It is further respectfully recommended that the Eighth Amendment claim asserted in Count I be permitted to proceed to discovery, but only against Defendants Ferguson, Bickell, and Coulehan.

It is respectfully recommended that the Eighth Amendment claim asserted in Count III be permitted to proceed, limited to Plaintiff's claims of being denied medical care for obvious injuries and remaining without running water and a functioning toilet from July 2, 2022 until July 5, 2022.

Finally, it is recommended that Defendants Harry, Little, Benning, Dick, Buzas, Zaken, Napoleon, and McCraken be dismissed from this case and terminated from the docket for lack of personal involvement.

[1] The Court notes that Plaintiff has used different names – "Bryant Young" and "Brian Young" – interchangeably. For purposes of consistency, the undersigned will use the Commit Name.

## II. REPORT

### A. PROCEDURAL BACKGROUND

Bryant Young ("Plaintiff") is a *pro se* prisoner currently housed at SCI-Coal Township. The events giving rise to this lawsuit occurred while Plaintiff was housed at SCI-Albion and SCI-Greene. *See* ECF No. 87, *generally*. Plaintiff commenced this action on March 18, 2024, with the filing of a civil rights complaint, followed by a Motion to Proceed *In Forma Pauperis*, which he subsequently filed on March 25, 2024. ECF Nos. 1, 4. On June 18, 2024, Plaintiff's Motion was granted and his Complaint was docketed the same day. ECF Nos. 6, 7. Defendants sought and were granted an extension of time to submit their response, and eventually filed their Motion to Dismiss on October 17, 2024. ECF Nos. 20, 22, 24. In lieu of responding to Defendants' Motion, Plaintiff sought and was granted leave to file an amended complaint. ECF Nos. 37-39. On December 23, 2024, Plaintiff's Amended Complaint was docketed, rendering Defendants' prior 12(b)(6) motion moot. ECF Nos. 41, 42. After being granted two extensions, Defendants filed their responsive pleading on March 14, 2025, seeking dismissal of Counts I, IV, and V, only. ECF Nos. 43, 44, 47-49. Plaintiff requested, and was granted, an extension of time in which to respond. ECF Nos. 53, 54. However, rather than file a response, Plaintiff filed a motion requesting to again amend his Amended Complaint. ECF No. 57. This Court interpreted Plaintiff's filing as a request to supplement his pending amended complaint, and granted his request, cautioning Plaintiff that piecemeal amendments are discouraged, and ordering Defendants to file a supplement to their pending Motion to Dismiss addressing Plaintiff's Supplement. ECF No. 58, 59.[2] Defendants submitted the ordered Supplement to their pending Motion to Dismiss which the undersigned

[2] Plaintiff's amended complaint was therefore comprised of documents at ECF No. 41 and ECF No. 59.

granted in part and denied in part. ECF Nos. 64, 69, 71.[3] Specifically, the motion was denied as to Plaintiff's Eighth Amendment Deliberate Indifference Claim that was asserted in Count I and denied as to Plaintiff's supervisory claim against Defendant Palmer that was asserted in Count V. ECF No. 71. The motion was granted as to Plaintiff's Fourteenth Amendment Due Process claim that was asserted in Count IV, and the same was dismissed with prejudice. *Id.* The motion was also granted as to Plaintiff's supervisory claims against Defendants Parker, Napoleon, Kennedy, Switzer, McCraken, Thompson, Jones, and Oliver, that were asserted in Count V. *Id.* Despite being afforded an opportunity to amend the supervisory claim asserted against Defendants Buzas, Zaken, and Hintemeyer, Plaintiff notified the Court that he would not be amending the claim, and a period of discovery commenced. ECF Nos. 77, 80, 81.

In this Court's Case Management Order, in addition to setting deadlines for discovery and dispositive motions, Plaintiff was directed "to move to amend his complaint to identify all remaining John and/or Jane Doe Defendants no later than February 20, 2026." ECF No. 80 § A(5). Following Defendants' request for an extension of time to complete discovery, the deadline for Plaintiff to file his amended complaint was extended to March 6, 2026. ECF Nos. 83, 84. On March 3, 2026, Plaintiff sought leave to file an amended complaint. ECF No. 85. The undersigned granted his request and his Second Amended Complaint ("SAC") was docketed on March 5, 2026, and remains the operative pleading. ECF No. 87. While the SAC is largely the same as his earlier pleading, in the SAC, Plaintiff identifies the John Doe Defendants and removes the previously dismissed due process claim. *Id.*

---

[3] At that stage of the proceedings, the parties had consented to have the undersigned conduct all proceedings in this case, inclusive of issuing decisions on dispositive motions and entering final judgments.

Defendants have now filed a motion to dismiss, seeking dismissal of Plaintiff's Eighth Amendment claims, to which Plaintiff submitted a response in opposition. ECF Nos. 90, 91, 95. Defendants' motion is ripe for review.

## B. FACTUAL BACKGROUND

On July 1, 2022, while incarcerated at SCI-Albion, Plaintiff was involved in an altercation with Defendant Pierson, who had a reputation for being hostile toward inmates. ECF No. 87 ¶¶ 32, 33. Various staff members, most of whom were unknown to Plaintiff, reported to the area where the altercation occurred, physically restrained Plaintiff, placed him on the ground, and then handcuffed him behind his back. *Id.* ¶ 34. After Plaintiff was subdued, but while still on the ground, Defendant Pierson approached Plaintiff and "hit him in the back of the head, with a knee strike, resulting in plaintiff's face hitting the floor; opening a gash on the eyebrow; that bled profusely." *Id.* ¶ 35. Defendants Buzzeo and Taylor, along with a lieutenant not a party to this suit, lifted Plaintiff off the ground and escorted him to the medical department, where Plaintiff received several staples to close the gash on his eyebrow. *Id.* ¶¶ 36, 37. The lieutenant departed and Defendant Palmer, the shift commander, took over the escort to the Restricted Housing Unit ("RHU"). *Id.* ¶ 38. Plaintiff was taken outside "when defendants Buzzeo, Taylor, Douglas and Rosario-Reese began slamming him against the wall and then slamming him face-first to the ground." *Id.* ¶ 39. Defendant Palmer, who was these officers' supervisor, threatened Plaintiff with bodily harm if he so much as "hiccupped." *Id.* ¶¶ 41. The remainder of the escort was uneventful because Plaintiff was fearful for his safety if he were to be noncompliant. *Id.* ¶ 42.

As Plaintiff was brought to the entrance of the RHU, Defendants Place, Froehlich, and Maluk "immediately began punching, kicking and slamming Plaintiff to the ground, without warning; all while yelling – 'stop resisting.'" *Id.* ¶ 44. Plaintiff alleges that the phrase "stop

resisting" is known throughout prison as a phrase used to cover up transgressions by officers. *Id.* ¶ 45. Defendant Bouyee participated in this assault, along with Defendants Taylor, Rosario-Reese, Maluk, Froehlich, Place, and Douglas, during which Defendant Taylor "pressed and rubbed plaintiff's face on the concrete; causing scrapes, lacerations and profuse bleeding." *Id.* ¶¶ 46, 47. Plaintiff contends that pursuant to DOC policy relative to use of force, to the extent force is even warranted, the least amount of force necessary is to be used against a prisoner. *Id.* ¶¶ 48, 49. Plaintiff was not offered medical care after this incident, and instead taken to a cell, and then transferred out of the facility "a mere few hours later." *Id.* ¶ 50.

Plaintiff was transferred to SCI-Greene, but was not examined during intake, even though he alleges that he had visible injuries from the earlier attacks. *Id.* ¶¶ 51, 52. Plaintiff claims that being transferred to SCI-Greene was "nothing more than a 'smoke screen' for continued circumvention and covert official oppression." *Id.* ¶ 53. After being denied medical attention, Plaintiff requested bandages and ointment from a passing nurse. *Id.* ¶ 54. Because Plaintiff was confined in a strip cage at the time, the nurse provided the requested items to Defendant Anderson. However, even after being taken to his housing unit, Defendant Anderson never gave the bandages or ointment to Plaintiff. *Id.* ¶ 55. Plaintiff alleges that this was the beginning of the harassment he experienced at SCI-Greene, which included being placed in a cell with no running water or working toilet, being deprived of that evening's meal, not being examined by medical upon reception to the facility or for the next three day, and instead being told to submit a sick call. *Id.* ¶¶ 56-60. Plaintiff asserts that he was denied treatment, even though it was apparent that he was in need of it, because "staff arbitrary [sic] want to harass plaintiff for the incidents at SCI-Albion were SCI-Greene staff's objective of more importance." *Id.* ¶ 63. More specifically, Plaintiff avers that from the time he arrived at SCI-Greene on July 2, 2022 to July 5, 2022, Defendants

Eans, Christopher, Carter, Anderson, and Milliken deprived Plaintiff of "food, yard exercise, hygiene products and basic necessities." *Id.* ¶ 64. Plaintiff claims that Defendants McCraken, Napoleon, Dick, and Carter, all of whom held supervisory positions at SCI-Greene, knew about the harassment to which Plaintiff was subjected, but failed to do anything. *Id.* ¶ 65.

On July 5, 2022, Plaintiff was seen by the Program Review Committee ("PRC"), where he voiced his complaints. *Id.* ¶ 66. After meeting with PRC, Plaintiff was given food and the water in his cell was restored, but he was still denied access to yard if Defendants Eans, Christopher, Anderson, Milliken, or Carter were assigned there. *Id.* ¶¶ 67, 68.

On July 25, 2022, Plaintiff was issued a disciplinary sentence of 180 days in the RHU for assault and aggravated assault at SCI-Albion. *Id.* ¶ 70. On November 8, 2022, Plaintiff participated in a Restricted Release List ("RRL") interview with Defendants Bickell and Ferguson and placed on RRL and specifically assigned to the Intensive Management Unit ("IMU"), which was a three-year program that Plaintiff describes as "a mask for indefinite long-term solitary confinement." *Id.* ¶¶ 70, 71. Plaintiff claims that while Defendant Bickell was aware of Plaintiff's "diminutive misconduct history," he either ignored this fact or failed to thoroughly investigate Plaintiff's conduct, and still placed him on RRL. *Id.* ¶¶ 72. There is no appeal process for RRL placement, the release from which requires "written permission from the Executive Deputy Secretary of Institutional Operations." *Id.* ¶¶ 74, 75.

On November 30, 2022, Plaintiff was transferred to the IMU. *Id.* ¶ 81. The IMU, maintained by the unit team, is a specialized unit intended to house challenging inmates who work through six phases and participate in periodic reviews, with the end goal of moving to general population. *Id.* ¶¶ 76-79. Plaintiff and the other participants of this program were housed in a cell with 24-hour lighting, and that only had a bed, desk, and toilet. *Id.* ¶ 104(A). All other furniture

was removed, and there was no place to hang or store anything. *Id.* Plaintiff spent 22 hours per day in his cell, and if he chose not to participate in yard, then he would be locked in for 24 hours. *Id.* Plaintiff was restricted from participating in vocational, religious, rehabilitative, or educational programming, but did have weekly out of cell group sessions with the unit team. *Id.* ¶ 104(G), (H). In the IMU, Plaintiff was afforded two hours of outside recreation per day, but given the outdoor conditions, including inmates throwing feces at one another, Plaintiff rarely participated in yard. *Id.* ¶ 104(B). Showers were offered three times per week, and those who chose to participate were subjected to a strip search. *Id.* ¶ 104(C). IMU participants did not have access to the same commissary as those in general population, limiting their options and the quality of items. *Id.* ¶ 104(E). IMU participants were also precluded from contact visits, meaning they could only participate in video visitations and, with regard to telephone privileges, those were also restricted but increased with phase progression. *Id.* ¶ 104(D), (I). Plaintiff avers that the food offered to IMU participants was of lesser quality than what was provided to general population inmates, including being cold and "crammed" onto a smaller tray. *Id.* ¶ 104(F). Plaintiff also claims that he was not provided with "adequate mental health stimulation" while housed in the IMU. *Id.* ¶ 104(J).

Plaintiff completed his 180-day disciplinary sentence on December 27, 2022. *Id.* ¶ 82. Upon completion, he requested the return of certain property that was removed from his possession while in disciplinary custody, including a tablet and television. *Id.* Defendant Coulehan explained that if Plaintiff participates in the IMU program, he would be eligible to receive his tablet in 60 days and his television in 90 days. *Id.* However, if he does not participate in the programming, he would need to wait 90 days for the tablet and 180 days for the television. *Id.* Plaintiff agreed to participate in programming so that he could get his property sooner. *Id.* ¶ 83. Plaintiff asserts

that he complained to the unit team about property that was destroyed before he entered SCI-Greene and that he did not have a bowl or a cup and could not order either item because of his RRL status. *Id.* ¶ 84. Defendant Coulehan advised Plaintiff that he would request PRC to let Plaintiff order the items; however, PRC denied the request. *Id.* ¶¶ 85-87. Plaintiff asserts that PRC's refusal to allow Plaintiff to order the items was in contravention of the IMU policy which gave PRC the option to permit such purchases to be made. *Id.* ¶¶ 88, 89. Plaintiff claims that his questions were not answered nor his concerns addressed during the periodic reviews, resulting in Plaintiff starting to "shy away" from them. *Id.* ¶¶ 90-94. Plaintiff progressed through the IMU program and was released early from the IMU and moved to general population, despite not having a psychological evaluation until at least 18 months into the IMU program. *Id.* ¶¶ 97, 98.

On November 6, 2023, Plaintiff filed a grievance related to the conditions of the RRL, and appealed it through all levels of appeal, including to final review. *Id.* ¶¶ 99, 100. Plaintiff also challenged his placement on RRL and in the IMU, pursuant to DC-ADM 802. *Id.* ¶ 101. After receiving a denial from the superintendent, Plaintiff appealed further and on February 9, 2024, Plaintiff received a final decision from the Chief Hearing Examiner, denying his appeal. *Id.* ¶¶ 102, 103.

On September 20, 2024, Plaintiff participated in an interview for RRL placement with the Regional Deputy Secretary, during which Plaintiff was advised that he would be released to general population. *Id.* ¶¶ 105-107. On October 15, 2024, Plaintiff met with PRC and was notified that he would be released to general population as a Phase 1 IMU inmate. *Id.* ¶ 108. On October 17, 2024, Plaintiff was transferred to SCI-Coal Township, and after being released from the IMU, experienced issues with adjusting to being housed in general population. *Id.* ¶¶ 109, 110. Plaintiff seeks monetary, declaratory, and injunctive relief. *Id.* at 24-25.

## C. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). Because Plaintiff is proceeding *pro se*, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering a motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Expounding on the *Twombly* and *Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, the Court recognizes that in a civil rights action, when dismissing a case for failure to state a claim, a court must give the plaintiff an opportunity to amend a deficient complaint, regardless of whether the plaintiff requests to do so, unless amendment would be inequitable or

futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

**D. <u>DISCUSSION</u>**

**1. <u>OFFICIAL CAPACITY CLAIMS</u>**

At the outset, Defendants submit that all claims against them, in their official capacities, should be dismissed. ECF No. 91 at 6-7. Plaintiff does not oppose Defendants' motion on this issue. ECF No. 95 at 2. Accordingly, it is respectfully recommended that all claims asserted against Defendants in their official capacities be dismissed with prejudice.

**2. <u>PERSONAL INVOLVEMENT</u>**

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "'Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode,* 845 F.2d at 1207).

Defendants Harry, Little, Benning, Napoleon, McCraken, Dick, Buzas, and Zaken submit that Plaintiff has failed to sufficiently allege their personal involvement. ECF No. 91 at 8-11. Plaintiff does not dispute this contention, and while he agrees that he has not alleged these Defendants' respective personal involvement, he qualifies his agreement with the following: "as it relates to 'supervisory liability' and agree[s] to dismiss the claim relating to supervisory liability." ECF No. 95 at 2. This Court previously dismissed supervisory claims asserted against Defendants Buzas, Zaken, Hintemeyer, Parker, Napoleon, Kennedy, Switzer, McCraken, Thompson, Jones, and Oliver. ECF No. 69 at 17; ECF No. 71; ECF No. 77; ECF No. 81. Despite this dismissal, and despite expressly reminding Plaintiff, *inter alia,* "that his amended complaint

is only to include those claims that were not dismissed with prejudice and that he was granted leave to amend. Plaintiff may not include in his amended complaint those claims that have already been dismissed with prejudice," ECF No. 73, Plaintiff nevertheless names Defendants Buzas, Zaken, Napoleon, and McCraken in his SAC. *See* ECF No. 87.

Since these individuals were previously dismissed from this case, and since Plaintiff – contrary to this Court's prior directives – nevertheless included them in his SAC with no additional facts to support their personal involvement, it is respectfully recommended that Defendants Buzas, Zaken, Napoleon, and McCraken be dismissed from this case and terminated from the docket. *Compare* ECF No. 41-2 ¶ 65, *with* ECF No. 87 ¶ 65.[4]

### 3. <u>EIGHTH AMENDMENT</u>

In Count I of the SAC, Plaintiff brings a deliberate indifference claim against Defendants Harry, Little, Ferguson, Bickell, Benning, Zaken, Buzas, and Coulehan related to his placement on RRL and his housing status in the IMU. ECF No. 87 ¶¶ 116-118. In Count III, Plaintiff brings an Eighth Amendment claim against Defendants Christopher, Carter, Dick, Napolean, Eans, McCraken, Anderson, and Milliken related to the conditions of his confinement during his first several days at SCI-Greene. *Id.* ¶¶ 122-124. The same claims were asserted in his prior complaint and this Court previously determined that Plaintiff alleged sufficient facts to withstand Defendants' prior motion to dismiss Count I. *See* ECF No. 41 ¶¶ 143-145; ECF Nos. 69, 71. Plaintiff, in his response to the pending motion, also brings up this fact, arguing that since this

---

[4] In a similar vein, Defendants Harry, Little, Benning, and Dick should be dismissed from this case because Plaintiff has failed to allege their respective personal involvement. Other than identifying these higher ranking individuals in the list of defendants, the SAC is devoid of any facts related to their participation in, or knowledge of, the events that transpired resulting in the initiation of this lawsuit. *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (liability under Section 1983 cannot be predicated on a *respondeat superior* theory).

Court previously determined that the claim could proceed to discovery, and since no new facts have been asserted in the SAC relative to this claim, Defendants' motion seeking dismissal of the Eighth Amendment claim in Count I should be denied. ECF No. 95 at 2-3. Plaintiff does not address the motion as it relates to the conditions of his confinement when he first arrived at SCI-Greene.

In their present motion, Defendants offer alternative theories in support of seeking dismissal of Plaintiff's Eighth Amendment claims, both of which pertain to Plaintiff's conditions of confinement at various times after being transferred to SCI-Greene. Albeit not clearly delineated, it appears that with regard to Count I, Defendants argue that they lacked the necessary personal involvement, and to the extent some did not, Plaintiff failed to sufficiently plead a viable claim. ECF No. 91 at 12-17. Even though Plaintiff labels his claim at Count III as "campaign of harassment," Defendants correctly interpret Plaintiff's claim as a conditions of confinement claim asserted under the Eighth Amendment, and argue that the claim fails as a matter of law because the deprivations Plaintiff experienced fall short of those necessary to implicate the Eighth Amendment. *Id*. at 13-17.

"The Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337 at 349 (1991). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. Nevertheless, the Eighth Amendment's prohibition of cruel and unusual punishment imposes constitutional limitations on a prisoner's conditions of confinement. *See Rhodes*, 452 U.S. 337; *Graham v. Connor*, 490 U.S. 386 (1989); *Wilson V. Seiter*, 501 U.S. 294 (1991).

To succeed on an Eighth Amendment claim related to the conditions of confinement, an inmate must meet two requirements: (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). The objective component is narrowly defined: only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The first element is satisfied when an inmate is deprived of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). These needs include "food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). "[A] totality of the circumstances test must be applied to determine whether the conditions of confinement constitute cruel and unusual punishment." *Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990). Temporary conditions typical of restrictive housing in Pennsylvania alone do not violate the Eighth Amendment. *See Whitney v. Wetzel*, 2015 WL 4920071, at *7 (M.D. Pa. Aug. 12, 2015) (*citing Griffin*, 112 F.3d at 709). For instance, short-term denials of showers, outdoor exercise, a blanket, and property access do not meet the threshold of unconstitutional deprivations. *See, e.g.*, *Freeman v. Miller*, 615 F. App'x 72, 77 (3d Cir. 2015); *Barnes v. Erie Cnty. Prison Admin.*, 2020 WL 4450297, at *4 n.3 (W.D. Pa. Aug. 3, 2020); *Ledcke v. Pa. Dep't of Corr.*, 655 F. App'x 886, 889 (3d Cir. 2016).

The second element is satisfied when an inmate shows that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights. *Wilson*, 501 U.S. at 302-03. "This subjective component is also narrowly construed." *Henry v. Overmyer*, 2013 WL 3177746, at *2 (W.D. Pa. June 24, 2013). A prison official's conduct violates the Eighth Amendment "only if he knows that the inmate[ ]

face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Farmer*, 511 U.S. at 847) (alterations in original).

Initially, as this Court previously wrote,

> Here, Plaintiff brings a conditions of confinement claim related to his time in the IMU, during which, *inter alia*, he was housed in a sparsely furnished cell with constant lighting, denied contact visits, had limited out of cell time, ate meals alone, had access to lesser quality food, did not have the opportunity to participate in vocational, religious or education programming, did not have access to contact visits (but was able to participate in virtual ones), and claims to have been provided with inadequate mental health care. ECF No. 41 ¶¶ 120(A)-(J).

ECF No. 69 at 11. While the paragraph numbers may have changed in his operative pleading, the substance of his claims relative to the conditions of his confinement while in the IMU have not. *See* ECF No. 87 ¶¶ 104(A)-(J). At this stage, Plaintiff has described, with sufficient specificity, the conditions to which he was subjected while in the IMU for nearly two years. *Id*. In a case related to a prisoner's IMU placement, where the inmate was subjected to conditions not too dissimilar to those alleged in Plaintiff's SAC, Chief Magistrate Judge Lanzillo wrote:

> Several courts have recently held that similar conditions, taken together, "are equivalent to solitary confinement." *Williams v. Stickney*, 2023 WL 5351950, at *6 (citing *Wayne v. Clark*, 2022 WL 17993131, at *5 (E.D. Pa. Dec. 29, 2022)); *Bertolette*, 2023 WL 9100642, at *8 (finding that nearly identical allegations to those in the instant case were sufficient, at least at the motion to dismiss stage, to plead an objectively serious constitutional deprivation).

*Blount v. Ackrom*, No. 2:22-CV-001040-RAL, 2024 WL 2834034, at *5 (W.D. Pa. June 4, 2024) ("Whether the conditions in the IMU are indeed as severe as described by Blount – and whether specific conduct by the Defendants amounted to deliberate indifference to that harm – are questions best explored on a fully developed record.") (footnote omitted). The same approach is appropriate here.

As such, it is respectfully recommended that Plaintiff's Eighth Amendment conditions of confinement claim, relative to his confinement in the IMU while on RRL, be permitted to proceed to discovery. However, as discussed *supra*, since Plaintiff failed to allege the requisite personal involvement of Defendants Harry, Little, Benning, Zaken, and Buzas, these Defendants should be dismissed from this case, and the deliberate indifference claim asserted in Count I, should proceed against Defendants Ferguson, Bickell, and Coulehan, only.[5]

The claim in Count III appears to relate to the conditions of Plaintiff's confinement from July 2, 2022 to July 5, 2022, which included being placed in a cell with no running water or functioning toilet, being deprived of an evening's meal, and not being examined by medical upon reception to the facility or for the next three day, and instead being told to submit a sick call. ECF No. 87 ¶¶ 56-60. Plaintiff asserts that he was denied treatment, even though it was apparent that he was in need of it, because "staff arbitrary [sic] want to harass plaintiff for the incidents at SCI-Albion were SCI-Greene staff's objective of more importance." *Id.* ¶ 63. Plaintiff alleges that Defendants Eans, Christopher, Carter, Anderson, and Milliken deprived Plaintiff of "food, yard exercise, hygiene products and basic necessities." *Id.* ¶ 64. Plaintiff claims that Defendants McCraken, Napoleon, Dick, and Carter, all of whom held supervisory positions, knew about the harassment to which Plaintiff was subjected, but failed to do anything. *Id.* ¶ 65.

At the outset, any supervisory claim Plaintiff may be asserting against Defendant Dick should be dismissed since Plaintiff has conceded that he has failed to allege this Defendant's

---

[5] Albeit a close call, at this stage of the proceedings, Plaintiff's allegations related to his RRL interview with Defendants Ferguson and Bickell, during which Defendant Bickell apparently acknowledged that Plaintiff did not meet the criteria for RRL placement, but designated him as an RRL inmate nonetheless, and his interactions with Defendant Coulehan, are sufficient for purposes of personal involvement. *See* ECF No. 87 ¶¶ 70-72, 82-86, 90-95. Defendants may revisit this issue on a fully developed record.

personal involvement.[6] *See* ECF No. 95 at 2. Similarly, the conditions of confinement claim predicated on being denied a single meal and access to exercise should likewise be dismissed because those conditions as alleged do not rise to the level of a constitutional violation. For example, Plaintiff alleges that he was denied a single meal, *see* ECF No. 87 ¶ 58, but "the denial of a meal on one occasion does not rise to the level of a constitutional violation. *See Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (prisoner denied one meal)." *Sainiak v. Newberry*, 2026 WL 286254, at *9 (M.D. Pa. Feb. 3, 2026). Plaintiff claims that he was deprived of yard exercise; however, he does not allege that this deprivation resulted in any injuries to him. *See Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (temporary denial of exercise generally fails to rise to the level of an Eighth Amendment violation); *see also Easley v. Vogt*, 2024 WL 3794663, at *3 (M.D. Pa. Aug. 13, 2024) (no viable claim for deprivation of exercise without allegations of adverse medical affects).[7]

However, the same cannot be said about Plaintiff's allegations of being without water and a functioning toilet between July 2 and July 5, and his allegations of being denied medical care for his "visible injuries." ECF No. 87 ¶ 60. Albeit a close call, at this stage of the proceedings, when allegations are to be viewed in a light most favorable to the non-movant, Plaintiff has alleged just enough to overcome the threshold of plausibility of an Eighth Amendment claim based on these conditions, only. Accordingly, it is respectfully recommended that the conditions confinement claim asserted against Defendants Eans, Christopher, Carter, Anderson, and Milliken be permitted

---

[6] Defendants McCraken and Napoleon were recommended for dismissal earlier in this Report and Recommendation.

[7] Despite Plaintiff alleging that he continued to be "routinely deprived of yard access depending on whether or not defendants Eans; Christopher; Anderson; Milliken or Carter was stationed on his assigned pod," ECF No. 87 ¶ 68, there are no allegations relative to injuries sustained because of this alleged deprivation.

to proceed, limited to Plaintiff's allegations of being denied medical care for obvious injuries and remaining without running water and a functioning toilet from July 2, 2022 until July 5, 2022.

## III. CONCLUSION

For the above reasons, it is respectfully recommended that Defendants' Motion to Dismiss be granted in part and denied in part. Specifically, it is recommended that all claims asserted against Defendants in their official capacities be dismissed with prejudice as amendment would be futile.

It is further respectfully recommended that the Eighth Amendment claim asserted in Count I of Plaintiff's SAC be permitted to proceed to discovery, but only against Defendants Ferguson, Bickell, and Coulehan.

It is respectfully recommended that the Eighth Amendment claim asserted in Count III be permitted to proceed, limited to Plaintiff's claims of being denied medical care for obvious injuries and remaining without running water and a functioning toilet from July 2, 2022 until July 5, 2022.

Finally, it is recommended that Defendants Harry, Little, Benning, Dick, Buzas, Zaken, Napoleon, and McCraken be dismissed from this case and terminated from the docket for lack of personal involvement.

Dated: October 13, 2026

**BY THE COURT**

s/ Kezia O. L. Taylor
KEZIA O. L. TAYLOR
United States Magistrate Judge

BRYANT YOUNG, MC 6581
SCI COAL TOWNSHIP
1 Kelley Drive
Coal Township, PA 17866